**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| TIG Insurance Company, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  3:17-cv-938 |
| ) | |
| City of Elkhart, National Casualty Company, ) | |
| and Keith Cooper, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, TIG Insurance Company ("TIG"), by its attorneys, SmithAmundsen LLC, pursuant to 28 U.S.C. §§ 2201 and 2202, for its Complaint for Declaratory Judgment against Defendants, City of Elkhart ("Elkhart"), National Casualty Company ("NCC"), and Keith Cooper ("Cooper"), states as follows:

## I.     NATURE OF ACTION

1.     In this insurance coverage action, TIG seeks a declaration that it owes no defense or indemnification obligations to Elkhart under three umbrella liability policies issued by TIG with respect to the underlying lawsuit filed by Cooper against Elkhart, among others.

## II.     THE PARTIES

2.     Plaintiff, TIG, is an insurance company organized and existing under the laws of the state of California with its principal place of business in the state of New Hampshire. TIG has been licensed to do business in the state of Indiana and has been doing business in the state of Indiana at all times relevant hereto.

3.     Defendant Elkhart is a municipality located in the South Bend Division of the Northern District of Indiana.

4. Defendant NCC is an insurance company organized and existing under the laws of the state of Ohio with its principal place of business in the state of Arizona. Because, on information and belief, NCC is defending Elkhart under a reservation of rights in the underlying lawsuit styled *Keith Cooper v. City of Elkhart, et. al.*, case no. 3:17-cv-00834, pending in the United States District Court for the Northern District of Indiana, South Bend Division, TIG has named NCC in this action in order to bind it to any judgment entered by this Court. TIG does not currently seek affirmative relief against NCC.

5. Defendant Cooper is a resident of Country Club Hills, Illinois. He has been named a party to this action in order to bind him to any judgment entered by this Court. In the event that he stipulates to be bound by this Court's judgment, TIG will voluntarily dismiss him from this action.

### III.   JURISDICTION AND VENUE

6. This court has jurisdiction over this matter pursuant to 28 U.S.C. Sec. 1332 because it is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs to which Elkhart claims it is entitled.

7. Pursuant to 28 U.S.C. Sec. 2201 and 2202, this Court has power to declare the rights of the parties with respect to an insurance policy over which there is an actual controversy.

8. Venue is proper pursuant to 28 U.S.C. Sec. 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

### IV.   THE UNDERLYING LAWSUIT

9. On November 6, 2017, Cooper filed a lawsuit against Elkhart, among others, styled *Keith Cooper v. City of Elkhart, et. al.*, in the United States District Court for the Northern District of Indiana, South Bend Division, case no. 3:17-cv-00834 (the "Underlying Lawsuit"). A

true and correct copy of the Complaint filed in the Underlying Lawsuit ("Underlying Complaint"), without Exhibits, is attached hereto as *Exhibit A*.

10. In the Underlying Complaint, Cooper alleges that Elkhart and other defendants participated in misconduct resulting in violations under 43 U.S.C. § 1983, including due process violations, malicious prosecution, fabrication of false evidence, supervisory liability, failure to intervene, conspiracy to deprive constitutional rights, and *Monell* claims, and committed certain torts under Indiana state law. (Ex. A at ¶¶190-252).

11. Specifically, Cooper alleges that on March 6, 1997, Steve Rezutko ("Rezutko"), a police officer in the Elkhart Police Department, filed a probable cause affidavit and initiated charges against Cooper for the attempted murder and armed robbery of Elkhart resident Michael Kershner that occurred on October 29, 1996 ("Incident") based upon evidence that was fabricated, manipulated, and improperly created by Rezutko, Edward Windbigler, Steve Ambrose, and Tom Cutler (the "Law Enforcement Defendants"). (*Id*. at ¶¶8, 17, 65-66).

12. On information and belief, Defendant NCC issued policies of insurance to Elkhart effective from March 1, 1996 to January 1, 2001.

13. On information and belief, NCC is defending Elkhart under a reservation of rights in the Underlying Litigation under a policy of insurance that was in effect at the time of Cooper's charging in connection with the Incident on March 6, 1997.

14. Elkhart has demanded a defense and indemnity from TIG under the TIG Excess Policies for the Underlying Lawsuit.

**V.    THE TIG UMBRELLA POLICIES**

15. TIG issued Umbrella Liability Policies No. XLB 37690641, effective from June 1, 1997 to June 1, 1998 ("1997 Policy"), Policy No. XLB 37690659, effective from June 1, 1998

3

to June 1, 1999 ("1998 Policy") and Policy No. XLB 37690688, effective March 1, 1999 to March 1, 2000 ("1999 Policy") (collectively, the "TIG Umbrella Policies") to Elkhart, true and correct copies of which are attached hereto as *Exhibits B, C, and D,* respectively, and are incorporated herein by reference.

16. The TIG Umbrella Policies respectively provided insurance, subject to the terms and conditions of the policies, with limits of $3,000,000 in excess of $1,000,000 of insurance provided by the underlying primary insurance carriers.

17. The relevant portions of the TIG Umbrella Policies are as follows:

> WE, the Company named in the Declarations, relying upon the statements shown on the Declarations page and in the Schedule of UNDERLYING INSURANCE attached to this policy, and in return for the payment of the premium and subject to the terms, conditions, exclusions, and limits of insurance of this policy, agree with YOU as follows:
>
> SECTION I
> INSURING AGREEMENTS
>
> A. COVERAGE
>
> WE will pay on YOUR behalf the sums that YOU shall become legally obligated to pay as damages because of PERSONAL INJURY, PROPERTY DAMAGE, or ADVERTISING INJURY, caused by an OCCURRENCE to which this policy applies during this POLICY PERIOD. The OCCURRENCE must take place in the COVERAGE TERRITORY.
>
> * * * *
>
> B. LIMITS OF INSURANCE
>
> WE shall be liable only for that portion of the ULTIMATE NET LOSS in excess of:
>
> 1. The applicable limits of the UNDERLYING INSURANCE listed in the attached Schedule of UNDERLYING INSURANCE (whether such insurance is collectable or not)….
>
> * * * *

4

C. DEFENSE PROVISIONS AND SUPPLEMENTAL PAYMENTS

1. DEFENSE PROVISIONS

   a. With respect to any OCCURRENCE covered by the UNDERLYING INSURANCE listed in the Schedule of UNDERLYING INSURANCE or any OTHER INSURANCE available to YOU and to which this policy applies. WE shall not be called upon to assume charge of the investigation, settlement or defense of any claim made or SUIT brought against YOU, but WE shall have the right and be given the opportunity to be associated in the defense and trial of any claims or suits relative to any OCCURRENCE which, in OUR opinion, may create liability on the part of US under the terms of this policy.

\* \* \* \*

SECTION II (EXCLUSIONS)
WHAT IS NOT COVERED BY THIS POLICY

This insurance does not apply:

A. Except in so far as coverage is available to YOU in the UNDERLYING INSURANCE and for the full limits of liability shown therein, to:

\* \* \* \*

   2. Fines, penalties, punitive damages, exemplary damages, or treble damages in whatever form assessed (unless prohibited by law);

\* \* \* \*

M. To PERSONAL INJURY or PROPERTY DAMAGE expected or intended from the standpoint of the INSURED; however this exclusion does not apply to PERSONAL INJURY resulting from the use of reasonable force to protect persons or property.

\* \* \* \*

WE shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost, expense, claim or SUIT excluded in this section, and in connection therewith Defense Provisions and Supplemental Payments shall not apply.

\* \* \* \*

SECTION III
DEFINITIONS

\* \* \* \*

K.  OCCURRENCE means an accident including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \* \*

M.  OTHER INSURANCE means insurance, other than UNDERLYING INSURANCE, which has been provided to YOU and affords coverage with respect to injury or damage to which this policy also applies.

N.  PERSONAL INJURY means:

   1. Bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time:

   2. One or more of the following offenses;
      (a) Fright, disability, shock, mental anguish and mental injury;
      (b) False arrest, detention, imprisonment, or malicious prosecution;
      (c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord, or lessor;
      (d) Libel, slander, defamation of character, humiliation or invasion of the rights of privacy, unless arising out of advertising activities.

O.  POLICY PERIOD means the period stated in the Declarations of this policy.

\* \* \* \*

U.  ULTIMATE NET LOSS means the amount of the principal sum, award or verdict actually paid or payable in cash in the settlement or satisfaction of claims for which the INSURED is liable, either by adjudication or compromise with the written consent of US, after making proper deduction for all recoveries and salvages.

V.  UNDERLYING INSURANCE means the policy or policies of insurance as described in the Schedule of Underlying Insurance forming a part of this policy.

W.  WE, US and OUR means the company shown in the Declarations as providing this insurance.

X.  YOU and YOUR means any INSURED under this policy.

\* \* \* \*

SECTION IV
CONDITIONS

\* \* \* \*

F.  DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT

1. YOU must see to it that WE receive prompt written notice of an OCCURRENCE which may result in a claim. Notice should include:
   a. How, when and where the OCCURRENCE took place;
   b. The names and addresses of any injured persons and witnesses.

2. If a claim is made or SUIT brought against YOU, YOU must see to it that WE receive prompt written notice of the claim or SUIT.

3. YOU and any other involved INSURED must:

   a. Immediately send US copies of any demands, notices, summons or legal papers received in connection with the claim or SUIT-,
   b. Authorize US to obtain records and other information;
   c. Cooperate with US in the investigation, settlement or defense of the claim or SUIT-,
   d. Assist US, upon OUR request, in the enforcement of any right against any person or organization which may be liable to YOU because of injury or damage to which this policy may also apply.

4. YOU shall not make or authorize an admission of liability or attempt to settle or otherwise dispose of any claim or SUIT without OUR written consent.

\* \* \* \*

DEFENSE AMENDATORY ENDORSEMENT

It is agreed that Section I - Insurance Agreements, C. Defense Provisions and Supplemental Payments, 1. Defense Provisions is amended to add the following:

WE shall not defend or investigate or effect settlement of any claim or suit which is not covered or is specifically excluded by this policy.

\* \* \* \*

7

NONCONCURRENCY ENDORSEMENT

Aggregate Limits of Liability listed in the Schedule of Underlying Insurance shall not be reduced, exhausted or in any way impaired at the inception of this policy. For the purposes of this policy, only occurrences taking place during OUR policy period shall be considered in determining the reduction, exhaustion or impairment of said underlying limits.

This policy applies only to occurrences taking place during the policy period as stated in the Declarations of this policy.

## VI.    TRIGGER OF COVERAGE UNDER TIG UMBRELLA POLICIES

18.     In *TIG Insurance Company v. City of Elkhart, et al.* ("*Elkhart I*"), 3:13cv902-PPS, a related case involving the same policies issued to Elkhart, this Court ruled that the "occurrence," or trigger of coverage, under the TIG Umbrella Policies for the incidents related to those alleged in the Underlying Lawsuit is the date of the charging of the underlying plaintiff. *See* Opinion and Order entered on August 17, 2015 in *Elkhart I*, Document No. 113 ("Opinion and Order"), a true and correct copy of which is attached hereto as Exhibit E, at p. 20.

19.     In the lawsuit underlying *Elkhart I*, Christopher Parish sued Elkhart and its employees for violation of due process under Section 1983 in connection with the same incident from which Cooper's Underlying Lawsuit arises. (*Id*).

20.     In its Opinion and Order in the coverage action, this Court found that under the terms of the TIG Umbrella Policies, coverage for Elkhart, if any, for claims by Parish, the underlying plaintiff, were triggered upon the date of Parish's wrongful charging. (*Id*).  The Court further found there was no coverage under the TIG Umbrella Policies because the wrongful charging took place before the TIG Umbrella Policies' periods began.

## VII.    COUNT I – DECLARATORY JUDGMENT
### (TIG Umbrella Policies are Not Triggered)

21.    TIG realleges and incorporates by reference the allegations contained in Paragraphs 1 through 20 as though fully stated herein.

22.    The TIG Umbrella Policies were effective from June 1, 1997 to March 1, 2000 and apply to claims for which there is coverage during the applicable policy period only.

23.    The date of charging of Cooper in connection with the Incident took place on March 6, 1997. (Ex A. at ¶65)

24.    This Court has ruled in *Elkhart I* that the "occurrence," or trigger of coverage, under the TIG Umbrella Policies for the incidents related to those alleged in the Underlying Lawsuit is the date of the allegedly wrongful charging of the underlying plaintiff. *See* Opinion and Order entered on August 17, 2017 2015 in *TIG Insurance Company v. City of Elkhart, et at.* 3:13cv902-PPS, Document No. 113, at 20 (finding that under the TIG Umbrella Policies, coverage for Elkhart, if any, for claims by Parish against Elkhart and its employees in connection with the same incident from which Cooper's Underlying Lawsuit arises were triggered upon the date of Parish's charging).

25.    Consistent with the Court's prior ruling, Elkhart is not entitled to coverage under the TIG Policies because the "occurrence" that Cooper alleges in the Underlying Lawsuit took place prior to the inception of the TIG Umbrella Policies.

26.    None of the TIG Excess Policies were effect at the time of Cooper's charging in connection with the Incident on March 6, 1997.

27.    Because there were no TIG Umbrella Policies in effect at the time of Cooper's charging on March 6, 1997, there can be no coverage under any of the TIG Umbrella Policies, as they are not triggered by Cooper's claims.

28. An actual controversy exists between TIG and Defendants, and by reason of 28 U.S.C. Sec. 2201, this Court is vested with power to declare the rights and liabilities of the parties hereto under the terms and conditions of the TIG Umbrella Policies and to adjudicate the final rights of the parties hereto thereunder, and to give such other and further relief as may be necessary to enforce the same.

**WHEREFORE,** Plaintiff TIG prays that this Honorable Court enter an order in favor of TIG and against Defendants, as follows:

A. Adjudging, decreeing and declaring that TIG has no duty to indemnify Elkhart or its employees for any settlement or judgment in the Underlying Lawsuit;

B. Adjudging, decreeing, and declaring that TIG has no obligation to pay any defense, defense expenses, or "ultimate net loss," as defined by the TIG Excess Policies, in connection with the Underlying Lawsuit relating to Cooper's claims; and

C. Granting such other and further relief as it deems just and proper under the circumstances.

### VIII.   COUNT II – DECLARATORY JUDGMENT
**(Alternatively, TIG has No Duty to Defend under the TIG Excess Policies)**

29. TIG realleges and incorporates by reference the allegations contained in Paragraphs 1 through 20 as though fully stated herein.

30. The TIG Umbrella Policies are policies of excess insurance which limit its obligations under the policies to a duty to indemnify, subject to the terms, conditions and exclusions of its policy.

31. As this Court previously noted in the related case, *TIG Insurance Company v. City of Elkhart, et at.* 3:13cv902-PPS at 20, the TIG Excess Policies contain no duty to defend. (Ex. E at 21).

32. On information and belief, NCC, the insurance company providing primary insurance to Elkhart effective at the time of Cooper's charging, is defending Elkhart under a reservation of rights.

33. TIG has no obligation to defend Elkhart against the allegations of the Underlying Lawsuit nor could any alleged duty be asserted while there is a defense being provided under primary policies of insurance, in this instance the applicable NCC policy.

34. TIG has no duty to indemnify Elkhart for defense costs related to the Underlying Lawsuit.

**WHEREFORE,** Plaintiff TIG prays that this Honorable Court enter an order in favor of TIG and against Defendants, as follows:

A. Adjudging, decreeing and declaring that TIG has no duty to defend Elkhart against the allegations of the Underlying Complaint;

B. Adjudging, decreeing and declaring that the TIG Umbrella Policies provide no duty to reimburse defense costs for Elkhart for the allegations of the Underlying Complaint; and

C. Granting such other and further relief as it deems just and proper under the circumstances.

### IX.   COUNT III – DECLARATORY JUDGMENT
**(No Coverage for Punitive Damages)**

35.   TIG realleges and incorporates by reference the allegations contained in Paragraphs 1 through 20 as though fully stated herein.

36.   The Underlying Complaint seeks recovery of punitive damages directly against Elkhart.

37.   Indiana public policy forbids the insuring of directly assessed punitive damages.

38.   Punitive damages are excluded from coverage under the TIG Umbrella Policies.

39.   The TIG Excess Policies do not provide coverage for punitive damages assessed against Elkhart.

40.   TIG has no duty to pay defense or indemnity costs associated with any award of punitive damages.

**WHEREFORE**, Plaintiff TIG prays that this Honorable Court enter an order in favor of TIG and against Defendants, as follows:

A.   Adjudging, decreeing and declaring that the Excess Policies do not provide coverage for punitive damages assessed against Elkhart;

B.   Adjudging, decreeing and declaring that TIG has no obligation to indemnify Elkhart for any punitive damages assessed against it related to the Underlying Litigation;

C.   Adjudging, decreeing and declaring that TIG has no duty to pay defense or indemnity costs associated with any award of punitive damages; and

D.   Award any such further relief this Court deems just.

## X.   PRAYER FOR RELIEF

WHEREFORE, for the reasons stated hereinabove, TIG Insurance Company prays that this Court enter judgment, finding in favor of the TIG and against Elkhart, finding and declaring as follows:

A.  The TIG Umbrella Policies were not in effect at the time of Cooper's charging on March 6, 1997, and therefore, no coverage exists for Elkhart under the TIG Umbrella Policies for the allegations of the Underlying Complaint;

B.  In the alternative, TIG has no duty to defend Elkhart against the allegations of the Underlying Complaint;

C.  TIG has no duty to indemnify defense costs related to the Underlying Lawsuit;

D.  The TIG Umbrella Policies do not provide coverage for punitive damages assessed against any Defendant hereto;

E.  TIG has no obligation to indemnify Elkhart for any punitive damages assessed against it related to the Underlying Litigation;

F.  TIG has no duty to pay defense or indemnity costs associated with any award of punitive damages; and

G.  Grant such further relief as the Court deems just and award TIG its costs incurred herein.

Dated:  December 15, 2017

                                      Respectfully Submitted By,

                                      TIG Insurance Company

                             By    /s/ Clay H. Phillips
                                    Attorneys for Plaintiff

Timothy J. Fagan (ARDC # 6202552)
Clay H. Phillips (ARDC # 2199041)
SMITHAMUNDSEN LLC
150 North Michigan Avenue -Suite 3300
Chicago, Illinois  60601
(312) 894-3200
(312) 894-3210 (fax)